UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
=====================================================

LING-RONG CHEN,

                        Plaintiff,

v.                                          6:06 - CV - 1143 (NPM / GHL)

THE CITY OF SYRACUSE, THE CITY
OF SYRACUSE POLICE DEPARTMENT,
SYRACUSE POLICE OFFICER JOHN
REILLY, and "JOHN DOES," FICTITIOUS
NAMES INTENDED TO BE POLICE OFFICERS,
EMPLOYEES OF THE CITY OF SYRACUSE
POLICE DEPARTMENT EACH INDIVIDUALLY
AND AS POLICE OFFICERS OF THE CITY OF
SYRACUSE POLICE DEPARTMENT,

                        Defendants.

-------------------------------------------------------------------------------------------------

APPEARANCES                              OF COUNSEL

COTE, LIMPERT & VAN DYKE, LLP             JOSEPH S. COTE, III, ESQ
Attorney for Plaintiff
214 North State Street
Syracuse, NY 13203

OFFICE OF CORPORATION COUNSEL            RORY A. McMAHON, ESQ.
Attorney for Defendants                   Corporation Counsel
300 City Hall
Syracuse, NY 13202

OFFICE OF CORPORATION COUNSEL            MARY ANN DOHERTY, ESQ.
Attorney for Defendants                   Asst. Corporation Counsel
300 City Hall
Syracuse, NY 13202

NEAL P. McCURN, Senior U.S. District Court Judge

## <u>MEMORANDUM - DECISION AND ORDER</u>

Plaintiff Ling-Rong Chen ("Mrs. Chen") brings this action for monetary

damages against the City of Syracuse ("City"), the City of Syracuse Police

Department ("Police Department"), Syracuse Police Officer John Reilly ("Officer

Reilly"), and Syracuse Police Officers whose names and shield numbers were

unknown at the filing of the complaint ("John Does"[1]) (collectively, "Police Officer

Defendants"), pursuant to 42 U.S.C.A. § 1983.  Plaintiff seeks redress for alleged

violations of civil rights secured to her by, but not limited to, the Fourth and

Fourteenth Amendments to the United States Constitution in the form of general

damages and punitive damages, together with the costs and disbursements of this

action.  Specifically, the eight-count complaint alleges the following federal and

supplemental state law claims: excessive force, false arrest, false imprisonment,

illegal search and seizure, and unlawful interrogation pursuant to § 1983 against only

the Police Officer Defendants;[2] false arrest, battery, false imprisonment, intentional

infliction of emotional distress, negligent infliction of emotional distress, and

---

[1]     The other officers involved have subsequently been identified as Officers Burns and Kliest.  (Doc. No. 10, Attachment 1).

[2]     Although the introductory statement of Mrs. Chen's complaint asserts civil rights violations against all parties, the first count complains of § 1983 violations by the Police Officer Defendants only.

malicious prosecution brought under pendent jurisdiction against all defendants; and negligent supervision, including negligent training of officers, detectives and employees against the City and the Police Department only.

The court has jurisdiction over this matter pursuant to 42 U.S.C.A. § 1983 and 28 U.S.C.A. §§ 1331 and 1343(a)(3).  Currently before the court is the Defendants' motion to dismiss the complaint (Doc. No. 4) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. For the reasons stated below, the motion to dismiss will be granted in part and denied in part.

**I.     Background**

**A.     Facts**

The following facts are taken from the complaint herein, and are presumed to be true for the purpose of this motion to dismiss.  At about 5:30 in the afternoon on September 23, 2005, Mrs. Chen was at the Syracuse Hancock International Airport in Syracuse, New York, intending to travel to Los Angeles with her husband, Dr. Chau Fang Chen ("Dr. Chen").  Upon approaching the ticket counter, the Chens were informed by ticket agent Lori Sundberg ("Sundberg") that their flight had been cancelled.  Mrs. Chen asked Sundberg to check for alternative flights, and she was told that there were none.  Sundberg told the Chens that they had two options, either

3

to take a refund or to take a flight the next morning.  Mrs. Chen asked to speak to a supervisor.  Sundberg did not respond or grant the request.  After further conversation between the parties, Dr. Chen admonished Sundberg by declaring that Sundberg had an "attitude problem."  Sundberg then summoned Officer Reilly and asked him to intervene.  The complaint alleges that Officer Reilly confronted Mrs. Chen, and ordered her to leave the airport.  Officer Reilly subsequently grabbed Mrs. Chen and handcuffed her.  Mrs. Chen alleges that a police officer then dragged her across the airport terminal, and at one point the officer lifted her off the ground by her arm, causing her wrists to bear the weight of her body.  This action allegedly caused Mrs. Chen to suffer from handcuff neuropathy, which permanently damaged the nerves in Mrs. Chen's wrist.

The defendants, in further support of their motion to dismiss, have attached Affidavit A (the police incident report and sworn statements from involved persons) to their reply memorandum of law (Doc. No. 10).  The defendants allege that Officer Reilly, acting on a request from Sundberg to remove two unruly customers from her ticket counter,  approached Dr. and Mrs. Chen and politely asked them to step away from the counter.  Officer Reilly states that the Chens refused and Mrs. Chen began yelling at Sundberg, at which point the officer stepped in front of Mrs. Chen and instructed her to calm down and to leave the airport.  Officer Reilly alleges that Mrs.

Chen then placed her hand on his chest and pushed him out of the way.  Officer
Reilly advised Mrs. Chen she was under arrest for disorderly contact and resisting
arrest, and asserts that she resisted arrest by pulling away from him and continued to
"fight and kick at" him. (Doc. No. 10, Affidavit A at 11). Officer Reilly placed
handcuffs on Mrs. Chen, who was then escorted across the airport to the police office
by Officer Burns.  Mrs. Chen is alleged to have kicked and screamed "the entire
length of the airport during this escort."  Dr. Chen was escorted to the police office by
Officer Kliest but was released without charge. Id.  In their reply memorandum (Doc.
No. 10), defendants further state that Mrs. Chen was "screaming, yelling and pointing
her finger at Sundberg," as well as "upsetting the other passengers in line at the
airport." Id.

In her response in opposition to the motion to dismiss  (Doc. No. 6), Mrs. Chen
addresses the assertion that she pushed officer Reilly by stating that he first yelled at
her to "get out of my airport," and then "used his imposing size and began to push his
chest against Mrs. Chen's body.  Feeling threatened, and in an attempt to protect
herself, Mrs. Chen raised her arms to cover her face and chest."  Officer Reilly
grabbed Mrs. Chen and proceeded to handcuff her "without provocation." Mrs. Chen
was dragged across the airport terminal by police officers who disregarded her "cries
of pain and pleas to stop." Id.

5

Mrs. Chen complains that she was then transported in a police vehicle to the Syracuse Police Department Holding Center, where she was placed in a cell and held overnight.  She was charged with disorderly conduct, harassment  and resisting arrest. At a jury trial held on February 8 and 9, 2006, Mrs. Chen was found not guilty of the charges. (Doc. No. 1).

**B.    Procedural History**

 On December 13, 2005, prior to the resolution of the criminal charges against her, Mrs. Chen's then attorney, Edward Menkin, Esq. ("Attorney Menkin"), filed a written Verified Notice of Claim which was hand delivered to the Office of Corporation Counsel of the City of Syracuse ("Corporation Counsel"), within the requisite ninety days after the claim arose.  On February 13, 2006,  a written Supplemental Verified Notice of Claim was filed by Attorney Menkin on behalf of Mrs. Chen, and was also hand delivered to the Corporation Counsel.

On February 28, 2006, Attorney Menkin sent a letter to the Corporation Counsel via facsimile requesting that "the City forbear its request to conduct its § 50-h Hearing"[3] while making it clear that he no longer represented Mrs. Chen with

---

[3]    McKinney's General Municipal Law § 50-h, Examination of Claims, states in pertinent part that

(1) Wherever a notice of claim is filed against a city ... [,] the city ... shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made, which examination shall be upon oral questions unless the parties otherwise stipulate and may include

6

regard to the matter.  The City did not subsequently request a § 50-h hearing.  When

the statute of limitations was about to run on Mrs. Chen's intentional tort causes of

action and she had not received a written demand from the City for a § 50-h hearing,

Mrs. Chen filed her complaint with this court on September 22, 2006.

## II.   Discussion

### A.   42 U.S.C.A. § 1983 Generally

In order to prevail on a claim under  42 U.S.C.A. § 1983, a plaintiff must

establish the violation of a right secured by the Constitution and laws of the United

States, and that the violation was committed by a person acting under color of state

law.  Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress, except
> that in any action brought against a judicial officer for an act
> or omission taken in such officer's judicial capacity,
> injunctive relief shall not be granted unless a declaratory
> decree was violated or declaratory relief was unavailable....

---

a physical examination of the claimant by a duly qualified physician...

(2) No demand for examination shall be effective against the claimant for any purpose
unless it shall be served as provided in this subdivision within ninety days from the date
of filing of the notice of claim....

McKinney's General Municipal Law § 50-h (West 2007).

42 U.S.C.A. § 1983 (West 2007).

In the case at bar, it is undisputed that the defendants were acting under the color of state law.

### B.    Motion to Dismiss

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the court must accept as true the well pleaded allegations of the complaint. Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).  In addition, the allegations of the complaint should be construed favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct 1683, 40 L.Ed.2d 90 (1973).  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The court is normally confined to consider only the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits" on a 12(b)(6) motion. Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

8

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, which renders the document integral to the complaint." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000) (internal citations and quotations omitted). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).

As stated <u>supra</u>, attached to the Defendants' motion to dismiss is a letter from Attorney Menkin to the Corporation Counsel, dated February 28, 2006. In this letter, Attorney Menkin asks the City to "forebear its request to conduct its §50-h Hearing" until Mrs. Chen secures counsel, and explains that he will no longer be representing Mrs. Chen, due in part to the potential for conflict of interest. Further, the Defendants have filed additional materials with its reply memorandum of law (Doc. No. 10) in

support of the motion to dismiss, including, <u>inter alia</u>, the police incident report and sworn statements from Sundberg and ticket agent Erica Johnson.  The court has considered the aforesaid documents, and assumes said documents, including the police report, were heavily relied on in drafting the complaint and the motion to dismiss.  Accordingly, the court finds no need to convert the motion to one for summary judgment at this stage.

As a threshold matter, the Defendants assert that pursuant to General Municipal Law § 50-h, Mrs. Chen is precluded from commencing an action against the City because she has not participated in a § 50-h hearing.  The Defendants move to dismiss counts two through eight of the complaint on this ground. The record reveals no evidence that the City ever demanded a § 50-h hearing. In accordance with the plain language of § 50-h, the court denies, without further discussion, the Defendants' motion to dismiss for failure to comply with § 50-h of General Municipal Law.

**C.     Qualified Immunity**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "In a suit

against an officer for an alleged violation of a constitutional right, the requisites of a

qualified immunity defense must be considered in proper sequence.  Where the

defendant seeks qualified immunity, a ruling on that issue should be made early in the

proceedings so that the costs and expenses of trial are avoided where the defense is

dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001).  "Qualified immunity is an

entitlement not to stand trial or face the other burdens of litigation.  The privilege is

an immunity from suit rather than a mere defense to liability," and if the case is

erroneously allowed to go to trial, the privilege is lost. Id. at 200-01 (internal

quotations omitted).  "If the law did not put the officer on notice that his conduct

would be clearly unlawful, ... [dismissal] based on qualified immunity is appropriate."

Id. at 202.

    "A defendant official is entitled to qualified immunity if (1) the defendant's

actions did not violate clearly established law, or (2) it was objectively reasonable for

the defendant to believe that his actions did not violate such law." Ford v. Moore, 237

F.3d 156, 162 (2d Cir. 2001).  "An officer's actions are objectively reasonable if

officers of reasonable competence could disagree on the legality of the defendant's

actions." Id. (internal quotations omitted).

    "In measuring reasonableness, we consider the facts and circumstances of each

particular case, including the crime committed, its severity, the threat of danger to the

officer and society, and whether the suspect is resisting arrest or attempting to evade

arrest ... [Dismissal] on qualified immunity grounds is not appropriate when there are

facts in dispute that are material to a determination of reasonableness. <u>Thomas v.</u>

<u>Roach</u>, 165 F.3d 137, 143 (2d Cir. 1999) (internal quotations and citations omitted).

      In the instant case, the court must determine at the outset if the Officers Reilly,

Burns, and Kliest are entitled to a qualified immunity defense.  As stated above, when

deciding a motion to dismiss, the court must accept as true the well pleaded

allegations of the complaint, and the allegations of the complaint should be construed

favorably to the pleader.   The question before the court is whether it was objectively

reasonable for the defendants to believe that their actions did not violate the law.  The

parties offer dramatically different versions of the airport incident, resulting in a

substantial issue of material fact.  Accordingly, the court finds that determining the

officers' objective reasonableness regarding the use of excessive force, if any, is a

question for the trier of fact.  At this early stage in the litigation, prior to any

significant discovery having been undertaken, the court cannot determine whether the

officers' actions were objectively reasonable, or if officers of reasonable competence

could disagree on the legality of the defendants' actions.  Consequently, the officers

are not entitled to immunity from suit under the privileges accorded under the

doctrine of qualified immunity.

**D.      Legal Capacity of City Police Department to sue or be sued**.

The defendants also assert that the City of Syracuse Police Department should be dismissed from this action since it has no legal capacity to sue or be sued.  Mrs. Chen is in agreement with the Defendants on this point, and states that the naming of the City of Syracuse Police Department was strictly a misnomer.  Accordingly, the Defendants' motion on this issue will be granted, and the City of Syracuse Police Department will be dismissed from this action.

**E.      Supplemental Jurisdiction over State Law Claims.**

The Defendants next assert that if the court grants its 12(b)(6) motion in all respects to all of Mrs. Chen's federal claims, then the court should decline to exercise supplemental jurisdiction over her state law claims.  For the reasons set forth above, the federal claims remain intact, and the court will deny the Defendants' motion to dismiss Mrs. Chen's supplemental state law claims at this time.

**F.      Punitive Damages Against City and Police Officer Defendants**

The Supreme Court addressed the issue of punitive damages levied against a municipality in City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), and held that "considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its official ... we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983." Id.  See

13

also, DiSorbo v. Hoy, 343 F.3d 172, 182 (2d Cir. 2003) ("[P]unitive damages may

not be awarded against a municipality under Monell").   "A claim against a

government officer in his official capacity is, and should be treated as, a claim against

the entity that employs the officer ...." Mathie v. Fries, 121 F.3d 808, 818 (2d Cir.

1997).  Consequently, "punitive damages are not available against municipalities, or

against defendants in their official capacities." Dorsett-Felicelli v. County of Clinton,

2006 WL 2792746 * 2 (N.D.N.Y. 2006).

     In the case at bar, Mrs. Chen is in general agreement with the Defendants that

municipalities and municipal employees in their official capacities are immune from

punitive damages.  In her reply to the Defendants' motion, Mrs. Chen clarifies that

any punitive damages sought are against the defendant police officers in their

individual capacities.  The court accepts this explanation, and holds as a matter of law

that punitive damages are not recoverable against the City or City employees in their

official capacities.

## III.   Conclusion

     For the reasons set forth above, the court hereby

(1) GRANTS the motion to dismiss the City of Syracuse Police Department;

(2) DENIES the motion to dismiss counts two through eight of the complaint for

failure to comply with § 50-h of the General Municipal law;

(3) DENIES the motion to dismiss on the issue of supplemental jurisdiction;

(4) DENIES the motion to dismiss on the grounds of qualified immunity; and

(5) GRANTS the motion to dismiss on the issue of punitive damages against the City and the Police Officer Defendants in their official capacity only.

**SO ORDERED.**

March 9, 2007.


_____

Neal P. McCurn
Senior  U.S. District Judge