UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LING-RONG CHEN,

                Plaintiffs,

v.                                          Civil Action Number: 6:06-cv-1143

THE CITY OF SYRACUSE, CITY OF SYRACUSE POLICE OFFICER JOSEPH REILLY, CITY OF SYRACUSE POLICE OFFICER HARRY BURNS and CITY OF SYRACUSE POLICE OFFICER MARK KLEIST, said POLICE OFFICER DEFENDANTS sued both INDIVIDUALLY and as POLICE OFFICERS OF THE CITY OF SYRACUSE POLICE DEPARTMENT,

                Defendants.

## **AFFIDAVIT OF JOSEPH COTE IN OPPOSITION TO DEFENDANTS MOTION**

STATE OF NEW YORK    )
                                   ) .ss.:
COUNTY OF ONONDAGA     )

       **JOSEPH S. COTE, III, ESQ.**, being duly sworn, deposes and states as follows:

       1.     I am the attorney for the Plaintiff herein, and as such am fully familiar with the prior pleadings and proceedings.

       2.     I submit this Affidavit in opposition to the Defendants Motion for summary judgment.

       3.     In the Defendants Motion, the Defendants make a number of claims, each of which will be addressed below.

# POINT I

**THE DEFENDANTS CLAIM THAT DEFENDANT OFFICERS USED NO MORE FORCED THAN WAS NECESSARY AGAINST THE PLAINTIFF, AND HAD REASONABLE BELIEF THAT THEIR USE OF FORCE DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

4. The Depositions of the Plaintiff and her husband, Dr. Chen, on their own, completely obliterate the argument that the officers used no more force than was necessary.

5. The Plaintiff, Ling-Rong Chen, had gone to the Syracuse International Airport in order to catch a flight to Los Angeles which was leaving at approximately 6:30 that evening. See the Deposition of Mrs. Chen, attached as Exhibit 12, at page 15. The Deposition of Mr. Chen is attached as Exhibit 13.

6. The Plaintiff arrived at the airport shortly after 5:30 p.m., and headed to the counter for Delta Airlines, which was a shared counter with Continental (Deposition of Mrs. Chen at page 15-16). She did not wait for long. Only one or two passengers were before her before she was seen (Deposition of Mrs. Chen at page 17).

7. When she approached, Ms. Sundberg advised her that her flight had been cancelled (Deposition of Mrs. Chen at page 17). Upon hearing the news that the flight was cancelled, the Plaintiff began to inquire about connecting flights, and advised Ms. Sundberg of her travel plans and how important it was that she arrived at Los Angeles (Deposition of Mrs. Chen at page 19). She was told by Ms. Sundberg that she could travel to Los Angeles the next day or she get a refund (Deposition of Mrs. Chen at page 21).

8. Mrs. Chen noticed that Lory Sundberg was not even looking at her computer to check about her flights, and asked Ms. Sundberg to look up to see if there were other flights that could get her and her husband to any other airport from which they could fly out to Los Angeles, but that Ms. Sundberg refused (Deposition of Mrs. Chen at page 21).

9. Ms. Sundberg then told her she had looked up for other customers and that there were no other flights (Deposition of Mrs. Chen at page 22).

10. While she was discussing these matters with Ms. Sundberg, her husband who had parked the car came into the airport with the luggage (Deposition of Mrs. Chen at page 22).

11. She then began to inquire whether she could possibly get a flight to any other airport and then she could take a different airline to Los Angeles (Deposition of Mrs. Chen at page 24).

12. Because she felt that Ms. Sundberg was being dismissive, she asked Ms. Sundberg if she could speak to her supervisor, and was told that the supervisor was in the other end of the building and was not available (Deposition of Mrs. Chen at page 26).

13. At this point, Mrs. Chen pointed out to Lori Sundberg that she had reservations for car rental and hotel and that there would be a penalty for canceling the car rental and the hotel and wanted to know if the airline would pay for them (Deposition of Mrs. Chen at page 26-27). When she made the statement to Ms. Sundberg, Ms. Sundberg said "Don't tell me what to do." At that point, her husband, Dr. Chen, raised his voice stating, "Lady, don't treat her like this. You have attitude problem." See Deposition transcript of Dr. Chen, page 12.

14. According to Mrs. Chen, her husband was "really yelling" and was "really upset", and Mrs. Chen told her husband, Dr. Chen, to "Let me handle it." Then she again asked Lori Sundberg to speak to her supervisor (Deposition of Mrs. Chen at page 28). In response to this, Mrs. Chen's requests were "ignored", and Lori Sundberg insisted that the Plaintiff only had two options; one to cancel her flight and get a refund, or wait to the following day for a flight (Deposition of Mrs. Chen at page 29).

15. It was at that point that Lori Sundberg stepped away from the counter, and apparently walked over to Officer Reilly who was already standing behind the counter talking to another ticket agent (Deposition of Mrs. Chen at page 29). When Officer Reilly

3

walked up to Mrs. Chen, he did not identify himself as a police officer, and she thought he was a security officer from the airport.

16. When he approached Mrs. Chen, he said, "Get out" repeatedly, and walked up to her left side (Deposition of Mrs. Chen at page 30-31). In response to his yelling, "Get out" to her, she moved away from the counter (Deposition of Mrs. Chen at page 33), and then he said "Get out of my airport", and came so close to her that he was almost touching her chest to chest (Deposition of Mrs. Chen at page 33).

17. In response to this statement, Mrs. Chen said ,"This is not your airport." It was at that point, she was violently attacked by Officer Reilly (Deposition of Mrs. Chen at page 33). Immediately after telling Officer Reilly that this was not his airport, she was grabbed and her arm was twisted behind her back and she was handcuffed (Deposition of Mrs. Chen at page 34-35).

18. Mrs. Chen said nothing in response to being handcuffed as she was in shock (Deposition of Mrs. Chen at page 35). At no point was she pushed to the ground as was claimed by the defense (Deposition of Mrs. Chen at page 35), and it was after she was handcuffed that Officer Reilly told her, "You are under arrest", making no statement as to the reason why she was under arrest ((Deposition of Mrs. Chen at page 35). When she was handcuffed, she was pushed away from the counter by Officer Reilly (Deposition of Mrs. Chen at page 36).

19. Based upon his voice and conduct, Mrs. Chen interpreted him as becoming mad when she said, "This is not your airport" (Deposition of Mrs. Chen at page 41).

20. After being handcuffed, she was dragged through the terminal (Deposition of Mrs. Chen at page 44). See also photographs attached which demonstrate that Officer Burns had lifted her using one arm, using his left hand to elevate her right shoulder in the air, and that at the time that he was escorting her she had bags which had been on her shoulder which fell on to the handcuffs, and that at no time did the officer attempt to remove the bags so as to take the pressure off her handcuffs, and that by lifting up her arm he was

4

causing her arm to work as a lever against her weight causing her a great pain and that she was crying out as she was being dragged through the airport (Deposition of Mrs. Chen at page 44).

21. At no time did she try to kick at any officer or resist arrest (Deposition of Mrs. Chen at pages 44 to 45). As she was being dragged through the terms, she was crying (Deposition of Mrs. Chen at page 45), and that Officer Burns while escorting her out of the airport actually lifted her off (Deposition of Mrs. Chen at page 47). As she was being through the airport, she begged to be allowed to walk on her own (Deposition of Mrs. Chen at page 48).

22. As she was being dragged through the airport, her sandals fell off her feet (Deposition of Mrs. Chen at page 49). After repeatedly asking to be allowed to walk on her own, Officer Burns ignored her and continued to drag her through the airport (Deposition of Mrs. Chen at pages 49 to 50).

23. She was taken to the airport police station and when she arrived there she advised another officer that her handcuffs were too tight and that her wrist was numb (Deposition of Mrs. Chen at page 52). That officer loosened her handcuffs and as she was loosening her handcuffs Officer Reilly said to the police officer who had loosened her handcuffs, "You are going to regret this." (Deposition of Mrs. Chen at page 52)

24. Mrs. Chen was advised while in that office that she was under arrest for harassment, disorderly conduct and resisting arrest. (Deposition of Mrs. Chen at page 54)

25. After the arrest she was transported to the Justice Center. (Deposition of Mrs. Chen at pages 54 to 55) She was housed overnight at the Correction Center and when released went to the hospital in Rome, New York. (Deposition of Mrs. Chen at page 60).

26. Photographs demonstrating the large amount of bruising she encountered, including bruising to her arm, showing that she was forcibly lifted leaving bruises on her

biceps are attached hereto as Exhibits 1-11.  See also the Deposition of Mrs. Chen at pages 61 to 62, wherein Mrs. Chen testifies to photographs being taken of her arm.

27.	When she was hospitalized, she was given pain killers for the pain she was experiencing in her arm and wrist (Deposition of Mrs. Chen at page 63).

28.	While temporary housed at the Correction Center, her husband attempted to provide her with medications for a medical condition that was preexisting and those medications were not provided (Deposition of Mrs. Chen at page 74).

29.	When she was being "escorted" down through the airport and her arm was lifted to her side lifting her off the ground, she experienced excruciating pain which she described as worse than child birth and for which she thought she was going to pass out (Deposition of Mrs. Chen at page 75).

30.	At the deposition, she identified photographs which show Officer Burns actually lifting her off the ground, holding her arm which she later discovered to have a large amount of bruises (Deposition of Mrs. Chen at page 75).

31.	She also explained that the carry-on bag and her handbag had still being on her shoulder when she was handcuffed and had fallen on to her handcuffs, causing more weight and pain (Deposition of Mrs. Chen at page 76).

32.	Plaintiff also identified photographs showing bruises to her upper arm from where Officer Burns had grabbed her, pinching her arms with such force as to leave bruises that were visible the following day (Deposition of Mrs. Chen at page 78).

33.	Additionally, the handcuffs which had been on her wrist would pull up against her back as she was being lifted from the side, causing bruising to her back (Deposition of Mrs. Chen at page 79).

34.	Despite the claims of the arresting officer Reilly that the only time that he actually lifted her hand in relation to him was when he was pushing her chest against her he lifted her upper hand between him and her (Deposition of Mrs. Chen at page 81).

6

35. Following these events, she was trying to resist arrest, harassment and disorderly conduct and was threatened with possible jail time, and was advised that she could spend up to a year in jail, but was offered a pre-arrangement in which she could walk away from the charges if she pled guilty and didn't insist upon a trial (Deposition of Mrs. Chen at page 82).

36. Because she did nothing wrong, she refused to accept any pre-arrangements, including one in which she would get an adjournment in contemplation of dismissal dating back to the moment of her arrest which she refused and insisted upon a trial in which she was acquitted. (Deposition of Mrs. Chen at page 83).

37. As a result of this trial, Lori Sundberg's testimony has been attached by the defense as an exhibit. What the defense failed to point out is that during her testimony Lori Sundberg made fun of the Plaintiff mocking her accent and adopted a Chinese accent which was racially humiliating and which the jury no doubt interpreted as being the testimony of a person not worthy of belief (Deposition of Mrs. Chen at page 84).

38. Furthermore, when Officer Reilly filled out the police report which had been attached by the Defendants as an exhibit, Officer Reilly reported that Mrs. Chen had "a mental illness" despite having been specifically advised that she had no such condition. (Deposition of Mrs. Chen at page 84)

39. From the above facts, it is clear that the officers did in fact used more force than was reasonably necessary, and had every reason to know that their use of force violated the Plaintiff's constitutional rights.

## POINT II

**THIS COURT SHOULD NOT DISMISS THE PLAINTIFF'S CLAIMS FOR ASSAULT AND BATTERY.**

40. The Defendants claim that the New York State law regarding assault and battery parallels the federal laws regarding excessive force. In this case, Officer Reilly had done more than merely apply excessive force in effectuating an arrest, but he rather had actually assaulted Mrs. Chen when he had no cause to arrest her for whatsoever. As was pointed out above, when Officer Reilly approached Mrs. Chen and demanded that she "get out" of the airport, she met his demand by stating that "it was not his airport". This statement by her apparently infuriated Officer Reilly and he assaulted her and arrested her when in fact his conduct amounted to nothing more than an assault and battery upon her unrelated to his police actions. In this case, the action under State law for assault and battery are distinct from and separate from the excessive use of force claim.

## POINT III

**OFFICER REILLY HAD NO PROBABLE CAUSE TO ARREST THE PLAINTIFF.**

41. In the Defendants Memorandum of Law, the Defendants argue at length that Officer Reilly had probable cause to arrest Mrs. Chen.

42. In point of fact, Mrs. Chen had committed no unlawful act. She simply was engaged in a discussion with a ticket agent who apparently took offense to her suggestions as to ways in which to remedy a business dispute. This ticket agent then went to Officer Reilly and asked that he get Mrs. Chen out of there which he did with gusto. Officer Reilly approached Mrs. Chen without legal cause and demanded that she get out of the airport without good cause. When she advised him of the simple fact that it was not his airport, he took great offense and arrested her for not legitimate charge but rather for "contempt of court" in that she challenged his authority whereupon he immediately arrested her and charged her for disorderly conduct and resisting arrest when those events did not occur.

Well probable cause can be proven by showing the "mere probability of criminal activity". In this case, there was no possibility of criminal activity; merely a customer having a dispute with her airline over questions of reimbursement. In this case all of the necessary elements for malicious prosecution had been met. There was a criminal proceeding commenced. The criminal proceeding was terminated in favor of the Plaintiff, Mrs. Chen. There was no probable cause for the criminal proceeding and the criminal proceeding was brought out of actual malice in that Officer Reilly who had filed the charges against Mrs. Chen, demonstrated that he was angry when she challenged his authority by saying that it was not his airport.

## POINT IV

**THE DEFENDANTS ARE NOT ENTITLED TO IMMUNITY IN THIS ACTION AS THE DEFENDANT(S) ACTED IN BAD FAITH.**

43. There is no immunity where bad faith is exercised. In this case, Officer Reilly acted in bad faith in having arrested Mrs. Chen and prosecuting her with charges for which there was no factual basis. The defendants admit that if Officer Reilly acted in bad faith without reasonable basis, he loses the cloak of qualified immunity (see page 26 of their Brief). That is precisely what is alleged here and the facts as alleged by Dr. Chen and his wife, Mrs. Chen, support that claim.

## POINT V

**THE PLAINTIFF'S CLAIM FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SHOULD NOT BE DISMISSED.**

44. That portion of the claim which alleges the intentional and negligent infliction of emotional distress as against the individual Defendant should be sustained, although Plaintiff concedes such an action cannot be maintained as against the municipal entity. The allegations contained in the Plaintiff's Complaint and as set forth in the testimony of Mrs. Chen do demonstrate that Officer Reilly and Officer Burns engaged in extreme and

outrageous conduct that such conduct could not have been engaged without intending to cause severe physical and emotional distress. As it was pointed out, the Plaintiff was screaming out in pain and begging to allowed to walk on her own feet as she was being dragged through the airport terminal at the hands of Officer Burns and was arrested and handcuffed by Officer Reilly would do nothing more than challenging his authority by pointing out that he did not own the airport, and there is a causal connection between the extreme pain and injury she suffered, including emotional injury.

45. To arrest an individual for merely engaging in a dispute with a ticket agent at an airport exceeds all possible bounds of common decency, and was in this case so utterly intolerable as to defy the norms of any civilized community.

**POINT VI**

**THE PLAINTIFF'S CLAIMS FOR NEGLIGENT SUPERVISION AND RETENTION SHOULD BE DISMISSED.**

46. In this case, the Plaintiff agrees that the Plaintiff has as of yet received no documentation which would support this claim, and the Plaintiff consents to the discontinuance of this portion of her claim.

47. It is respectfully submitted that all other allegations raised by the Defendants are without merit, and that summary judgment cannot be granted in a case where there is a primary dispute over the facts.

S/_____
JOSEPH S. COTE, III

Sworn to before me this 8th day of September, 2008.

S/_____
Notary Public