UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
==================================================
LING-RONG CHEN,

                         Plaintiff,


v.                                          6:06 - CV - 1143 (NPM / GHL)


THE CITY OF SYRACUSE,
Syracuse Police Officer JOSEPH REILLY,
Syracuse Police Officer HARRY BURNS, and
Syracuse Police Officer MARK KLEIST,  said
Police Officer Defendants sued both individually
And as Police officers of the City of Syracuse
Police Department,

                         Defendants.
--------------------------------------------------------------------------------------------
APPEARANCES                          OF COUNSEL

COTE, LIMPERT & VAN DYKE, LLP        JOSEPH S. COTE, III, ESQ.
Attorneys for Plaintiff              M. JOANNE VAN DYKE, ESQ.
214 North State Street
Syracuse, NY 13203

CHARTWELL LAW OFFICES, LLP           JOHN W. WUTZ, ESQ.
Attorney for Plaintiff
1717 Arch Street, Suite 2920
Philadelphia, PA  19103

OFFICE / CORPORATION COUNSEL         RORY A. McMAHON, ESQ.
Attorneys for Defendants             MARY ANN DOHERTY, ESQ.
300 City Hall
Syracuse, NY 13202


NEAL P. McCURN, Senior U.S. District Court Judge


## MEMORANDUM - DECISION AND ORDER

Plaintiff Ling-Rong Chen ("Mrs. Chen") brings this action for monetary damages against the City of Syracuse ("City"), Syracuse Police Officer Joseph Reilly ("Officer Reilly"),  Syracuse Police Officer Harry Burns[1] ("Officer Burns") and  Syracuse Police Officer Mark Kleist ("Officer Kliest") (collectively, "police officer defendants"), pursuant to 42 U.S.C.A. § 1983.  Plaintiff seeks redress for alleged violations of civil rights secured to her by, but not limited to, the Fourth and Fourteenth Amendments to the United States Constitution, in the form of general damages against all defendants and punitive damages against the police officer defendants in their individual capacities, together with the costs and disbursements of this action.  Specifically, the eight-count amended complaint (Doc. No. 56) alleges the following federal and supplemental state law claims: excessive force, false arrest, false imprisonment, illegal search and seizure, and unlawful interrogation pursuant to § 1983 against the police officer defendants; false arrest, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution brought under pendent jurisdiction against all defendants; and negligent supervision, including negligent training of officers, detectives and employees,

---

[1]        Doc. No. 49-2 is a transcript of the examination before trial of Henry Burns, III. The court presumes that Henry is the correct given name of Officer Burns.  The parties are directed to correct the discrepancy.

2

against the City only.

The court has jurisdiction over this matter pursuant to 42 U.S.C.A. § 1983 and 28 U.S.C.A. §§ 1331 and 1343(a)(3).  Currently before the court is defendants' motion for summary judgment (Doc. No. 45) pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons stated below, the motion for summary judgment will be granted in part and denied in part.

## I.    Background

### A.    Facts

The court assumes familiarity with the facts and procedural history of this case, as set forth in the court's Memorandum Decision and Order dated March 9, 2007 (Doc. No. 12).  The court reiterates those facts and any additional facts taken from the parties' briefs on this new motion only as necessary to clarify its findings.

## II.    Discussion

As a threshold matter, the parties concur that no evidentiary documentation has been proffered that supports a claim for negligent hiring, training and/or supervision against the City which would support a <u>Monell</u>[2] claim.  Accordingly,

---

[2]    <u>See</u> <u>Monell v. New York Department of Social Services</u>, 436 U.S. 658 (1978) (Supreme Court found that municipalities could be sued under § 1983 as "persons" within the meaning of that statute only "when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom").

Mrs. Chen consents to dismissal of this portion of her claim against the City.

### A.    Summary Judgment

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (West 2009). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]" Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002),

4

(<u>citing</u> Fed. R. Civ. P. 56(c)), by a showing sufficient to establish the existence of

every element essential to the party's case, and on which that party will bear the

burden of proof at trial. <u>See</u> <u>Peck v. Public Serv. Mut. Ins. Co.</u>, 326 F.3d 330, 337

(2d Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 540 (2003).

**B.    42 U.S.C.A. § 1983 Generally**

In order to prevail on a claim under  42 U.S.C.A. § 1983, a plaintiff must

establish the violation of a right secured by the Constitution and laws of the

United States, and that the violation was committed by a person acting under color

of state law.  Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in
> an action at law, suit in equity, or other proper proceeding
> for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall not be
> granted unless a declaratory decree was violated or
> declaratory relief was unavailable....

42 U.S.C.A. § 1983 (West 2007).

In the case at bar, it is undisputed that the defendants were acting under the color

of state law.

5

## C.    Federal Claims

### 1.    False Arrest and Imprisonment

A § 1983 claim for false arrest and imprisonment derives from the "Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest without probable cause.  In analyzing § 1983 claims for unconstitutional false arrest, [the Second Circuit has] generally looked to the law of the state in which the arrest occurred." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (internal citations and quotations omitted).

"In order to establish a claim for false arrest and/or imprisonment under § 1983 and New York law, a plaintiff must show that the defendant intentionally confined him without his consent and without justification. Probable cause is a justification for, and a complete defense to, a claim for false arrest and imprisonment under both § 1983 and New York law." Swindell v. New York Dept. of Environmental Conservation, 371 F. Supp. 2d 172, 179 (N.D.N.Y. 2005). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that

the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly, 439 F.3d at 152.

Here, the defendants argue that based on Mrs. Chen's behavior at the airport ticket counter, Officer Reilly had probable cause to arrest Mrs. Chen for disorderly conduct, citing New York Penal Law § 240.20, which states in pertinent part that "A person is guilty of disorderly conduct when, with intent to cause public convenience, annoyance or alarm, or recklessly creating a risk thereof: (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse ...." NY Penal § 240.20(6) (West 2009). Defendants argue that "[i]n the area of the ticket counter where [Mrs. Chen] was located, there were between 15 and 20 other people congregated near her and were observing her actions." Doc. No. 45-4, p. 20.  Because Mrs. Chen did not comply when Officer Reilly allegedly told her to leave the airport, defendants proffer that "[Mrs. Chen] was: (1) congregating with persons in a public place and 2) refusing the leave the scene of a disturbance when requested to by police officers, she was

(sic) causing public inconvenience and annoyance." Id.  The court deems this argument disingenuous, and finds a genuine issue of material fact on the matter of false arrest and imprisonment.

Defendants also argue that Officer Reilly had probable cause to arrest Mrs. Chen for harassment, citing New York State Penal Law § 240.26, which states in pertinent part that "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: 1. He or she strikes, shoves, kicks, or otherwise subjects such other person to physical contact, or attempts or threatens to do the same ...." NY Penal § 240.26 (1) (West 2009).  Officer Reilly contends that Mrs. Chen struck him.  Mrs. Chen contends that Officer Reilly shoved his chest in her face in a threatening manner, and she raised her hands to protect herself.  Based on the evidence before the court, the court finds that reasonable minds could differ on this issue, precluding summary judgment.

Finally, defendants argue that Mrs. Chen resisted arrest, citing New York State Penal Law § 205.30 which states in pertinent part that "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." NY Penal § 205.30 (West 2009).  Defendants argue that Mrs. Chen resisted the officer's attempt to place handcuffs on her.  Mrs. Chen disputes the

defendants' version of events, as does her husband, Dr. Chen.  Again, based on the evidence before the court,  reasonable minds could differ on the conflicting evidence proffered by the parties, thereby precluding summary judgment.

## 2. Malicious Prosecution

"Although § 1983 provides plaintiffs with a federal cause of action, [the Second Circuit] borrow[s] the elements of the underlying malicious prosecution from state law." Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004).  In order to prevail in an action for malicious prosecution under New York law, a plaintiff must prove: "1) the initiation or continuation of a criminal proceeding against plaintiff; 2) termination of the proceeding in plaintiff's favor; 3) lack of probable cause for commencing the proceeding; and 4) actual malice as a motivation for defendant's actions."  Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995).  "The absence of probable cause is an essential element of a claim for malicious prosecution." McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006).

"[T]he only question for [the court] to consider is whether [the] arrest was ... justified ... [T]he defendants bear the burden of proving that probable cause existed for the plaintiff's arrest." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotes omitted).  However, "even when probable cause is

9

present at the time of arrest, evidence could later surface which would eliminate that probable cause.  If probable cause were no longer present at the time of the arraignment ..., malicious prosecution might then lie." Cox v. County of Suffolk, 780 F. Supp. 103, 108 (E.D.N.Y. 1991) (internal quotations omitted).

In the case at bar, the issue of probable cause is disputed, and defendants bear the burden of convincing the trier of fact that probable cause existed for Mrs. Chen's arrest.  Defendants argue that Mrs. Chen's actions at the ticket counter "would lead a reasonable officer to believe that [Mrs. Chen] had committed a crime."  Because of the discrepancies between the sworn testimony of plaintiff and defendants, and between the testimony and visual evidence, the court is precluded from granting summary judgment on the issue of malicious persecution.

### 3.    Excessive Force

"[A] [p]olice officer's application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent and motive." Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)) (internal quotations omitted).  "The reasonableness of a particular use of force must be judged from the perspective of

a reasonable officer on the scene, rather than with the 20/20 of hindsight ... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396.

"Neither the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." Soares v. State of Connecticut, 8 F.3d 917, 922 (2d Cir. 1993).  However, "[h]andcuffing has been found to give rise to a claim of excessive force where an individual suffers an injury as a result of being handcuffed." Rosado v. Williams, 2006 WL 1168032 at * 3 (D. Conn. 2006). "[A] reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out.  Placing handcuffs on an arrestee tight enough to cause nerve damage may, however, constitute excessive force in violation of the Fourth Amendment." Id.   The Second Circuit has permitted a plaintiff's claim to survive summary judgment after allegations that during the course of an arrest, a police officer yanked the plaintiff out of a car, threw her up against a fender, and twisted her arm behind her back, causing minor bruising. Maxwell, 380 F.3d at 108 (citing Robison v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987)).  Here, we also have testimony about bruising on Mrs. Chen's arms and other parts of her body, allegedly resulting from Mrs. Chen

being handcuffed and forcibly removed from the ticket counter to the airport

police station.  Photographs submitted with the parties' motion papers bear out the

allegation of injury.  Based on the evidence before it, the court finds that there

remains a genuine issue of material fact surrounding the actions of the defendant

police officers because reasonable minds could differ in determining whether the

officers used excessive force.  The court is therefore precluded from granting

summary judgment  on the issue of excessive force.

### D.    State Law Claims

#### 1.    Battery

"To prove a civil battery claim against a police officer, a plaintiff is required

to show that the officer made bodily contact, that the contact was offensive, and

that [the officer] intended to make the contact. Additionally, the plaintiff is]

required to prove that [the officer's] conduct was not reasonable within the

meaning of the New York statute concerning justification of law enforcement's use

of force in the course of their duties [i.e ., N.Y. Penal Law § 35.30(1) ]."

Kavazanjian v. Rice, 2008 WL 5340988 at * 6-7 (E.D.N.Y. 2008) (citing Nimely

v. City of New York, 414 F.3d 381, 391 (2d Cir.2005)) (internal quotation marks

and citations omitted). "New York Penal Law § 35.30(1) provides, in relevant

part, that '[a] police officer ... in the course of effecting or attempting to effect an arrest ... may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest....'  Thus, in effect, 'the test for whether a plaintiff can maintain [a state-law assault-and-battery] cause of action against law enforcement officials is ... the exact same test as the one used to analyze a Fourth Amendment excessive force claim." Id. (citing Hogan v. Franco, 896 F.Supp. 1313, 1315 n. 2 (N.D.N.Y.1995).

In the case at bar, defendants argue that New York State law regarding assault and battery parallels the federal laws regarding excessive force, citing Lalonde v. Bates, 166 F.Supp.2d 713, 719 (N.D.N.Y. 2001) for the premise that Mrs. Chen's cause of action for battery should be dismissed as duplicative.  Mrs. Chen argues that Officer Reilly's conduct amounted to nothing more than assault and battery on her, unrelated to the officer's police actions.  Consequently, she avers, her state law claim for assault and battery is separate and distinct from the excessive use of force claim.

In their argument, defendants neglect to point out that the Lalonde court found that summary judgment was denied with respect to the plaintiff's assault and battery claims for the same reasons that summary judgment was denied on the excessive force claims. Id.   See also Ahern v. City of Syracuse, 411 F.Supp.2d

13

132, 143-44 (N.D.N.Y. 2006) ("Because plaintiff's claims for assault and battery parallel plaintiff's excessive force claims and involve questions of fact as detailed above, defendants motion for summary judgment as to plaintiff's assault and battery claims against [police officers] is DENIED").  Accordingly, because Mrs. Chen has proffered sufficient evidence to withstand summary judgment with respect to her Fourth Amendment excessive-force claims against the police officer defendants, Mrs. Chen's common law battery claim similarly survives summary judgment.

### 2.    Infliction of Emotional Distress

Mrs. Chen alleges that the police officer defendants committed the common law torts of intentional infliction of emotional distress ("IIED") and negligent infliction of emotion distress ("NIED") against her.  As a threshold issue, Mrs. Chen concedes that a cause of action for IIED and/or NIED cannot be maintained against the municipal entity.  Accordingly, summary judgment is granted on this issue, and the claims of IIED and NIED against the City are dismissed.

### a. Intentional Infliction of Emotional Distress

As this court has recently held,[3] "[t]o state a claim for IIED under New York

---

[3]     See Dzwonczyk v. Syracuse Police Dept., 2008 WL 5459147 at * 17-18 (N.D.N.Y. 2008).

law, [a] plaintiff must plead the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." Davey v. Jones, 2007 WL 1378428 at * 3 (S.D.N.Y.2007) (citing Bender v. City of New York, 78 F.3d 787, 790 (2d Cir.1996)). "To satisfy the first element, the alleged conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Davey, 2007 WL 1378428 at *3 (internal citations and quotations omitted).  The Second Circuit has noted that New York State courts have sustained IIED claims where there is "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." Stuto v. Fleishman, 164 F.3d 820, 828 (2d Cir.1999).

In the instant case, defendants argue that the conduct complained of falls within the scope of Mrs. Chen's false arrest, battery and excessive force claims, and, in the alternative, that she has failed to adduce any facts in support of her IIED claim.  "[T]he Second Circuit has not clearly resolved the issue of whether, under New York law, duplicative IIED claims are barred, nor, if so, the degree to

15

which an IIED claim must "overlap" other torts to be deemed duplicative ...

Nevertheless, where, as here, the alleged tortious conduct falls entirely within the

ambit of traditional tort liability-where the plaintiff alleges no facts whatsoever

beyond those necessary to sustain claims of false arrest and excessive force-we

believe New York state courts would not entertain a separate claim for IIED." Li

v. Aponte, 2008 WL 4308127 at * 8 (S.D.N.Y. 2008).  "However, some courts

have sustained IIED claims even where the conduct complained of fell under other

traditional tort doctrines." Sylvester v. City of New York, 385 F.Supp.2d 431, 443

(S.D.N.Y. 2005).  Here, Mrs. Chen alleges facts that sustain a separate claim of

IIED.  Accordingly, based on the evidence before it, the court finds a genuine

issue of material fact and is precluded from granting summary judgment.

### b. Negligent infliction of Emotional Distress

A plaintiff who alleges that she suffered emotional harm due to a

defendant's negligence may recover on a claim for NIED in New York under

either a "bystander theory," meaning the plaintiff was "a bystander who was in the

zone of danger [and] suffers emotional trauma as a result of [her] observations," or

a "direct duty theory," meaning "the defendant breache[d] a direct duty to [the]

plaintiff which results in emotional injury to the plaintiff." See Stephens v. Shuttle

Associates, L.L.C., 547 F.Supp.2d 269, 275 (S.D.N.Y.2008).  In order to recover

16

under the bystander theory, a plaintiff must prove that she witnessed "the death or serious bodily injury of a member of her immediate family" (id.), which clearly is not applicable in this case.   Consequently, Mrs Chen's only chance for recovery here would be under the direct duty theory, wherein "a plaintiff suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical safety." Id., at 275-276. Nonetheless, "[t]he duty in such cases must be specific to the plaintiff and not some amorphous, free-floating duty to society." Id.

In the case at bar, Mrs. Chen alleges that she suffered an emotional injury from the defendant police officers' threat to her physical safety and subsequent injury to her person.   Defendants argue that Mrs. Chen has failed to prove that the defendant police officers breached a duty owed to her.  Mrs. Chen has failed to address this issue in her response to the motion for summary judgment.  She has not offered any facts establishing a prima facie case of NIED, i.e., she has provided no evidence of a breach of duty owed to her by the defendant police officers. See  eg., Lee v. McCue, 410 F.Supp. 2d 221, 227 (S.D.N.Y. 2006).

Accordingly, the court finds that Mrs. Chen has alleged no facts that would allow her to maintain a separate claim for NIED.  Therefore, summary judgment is granted on the NIED claim, which is dismissed for failure to allege facts sufficient

17

to state a cause of action.

### E.   Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The seminal law on this issue is Pearson v. Callahan, --- S.Ct. ----, 2009 WL 128768 (U.S. 2009).  Pearson is a decision handed down by the Supreme Court on January 21, 2009, which effectively overruled Saucier v. Katz, 533 U.S. 194, 200 (2001). Since 2001, courts have relied on Saucier to set forth the procedure that a court must follow in determining if a defendant is immune from suit pursuant to the doctrine  of qualified immunity.   Saucier stood for the premise that "[f]irst, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Pearson, 2009 WL 128768 at *6.  In reconsidering Saucier, the Pearson  Court found that while the Saucier

protocol is often beneficial, it is no longer considered mandatory in all cases.  In

explaining its decision, the Court wrote that "[i]t is often difficult to decide

whether a right is clearly established without deciding precisely what the

constitutional right happens to be ...  [T]he rigid <u>Saucier</u> procedure ... sometimes

results in a substantial expenditure of scarce judicial resources on difficult

questions that have no effect on the outcome of the case." <u>Id.</u> at * 10.  In effect,

<u>Pearson</u> gives courts additional discretion in deciding the issue of qualified

immunity without a lengthy analysis of whether there was in fact a constitutional

violation. In other words, a court may exercise discretion in deciding which of the

two prongs of the qualified immunity inquiry to address first.

  <u>Saucier</u> still stands for the premise that "[q]ualified immunity operates to

protect officers from the sometimes hazy border between excessive and acceptable

force .  Because police officers are often forced to make split-second judgments -

in circumstances that are tense, uncertain, and rapidly evolving - about the amount

of force that is necessary in a particular situation, the reasonableness of an officer's

belief as to the appropriate level of force should be judged from that of an

on-scene perspective." <u>Saucier</u>, 533 U.S. at 205.

  As stated <u>supra</u>, "[a] court must consider whether the officers' actions are

'objectively reasonable' in light of the facts and circumstances confronting them,

19

without regard to their underlying intent or motivation ... Not every push or shove, even if it may later seems unnecessary in the peace of a judge's chambers, violates the Forth Amendment." Graham v. Connor, 490 U.S. at 396-97 (internal quotations omitted).  However, where "the record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense," summary judgment cannot be granted.  Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006).  See also Simpkin v. City of Troy, 638 N.Y.S.2d 231, 232 (N.Y. App. Div. 1996) ("Clearly, without a factual resolution of the sharply conflicting versions of these events, it is not possible to determine whether defendants are qualifiedly immune").

In the instant case, the court must determine at the outset if Officers Reilly, Burns, and Kliest are entitled to a qualified immunity defense.  After a careful review of the documents submitted by the parties, the court finds that Officer Kleist did nothing more than escort Dr. Chen to the airport police station, and no evidence has been proffered to indicate that Officer Kleist used force of any kind against Mrs. Chen, nor does Mrs. Chen specifically relate any wrongdoing by Officer Kleist in either her complaint or her deposition testimony.  Accordingly, Officer Kleist will be dismissed from this action.

The question remains whether it was objectively reasonable for the

remaining police officer defendants to believe that their actions did not violate the law.  The parties offer dramatically different versions of the airport incident, resulting in a substantial issue of material fact.  Construing the facts of the case favorably toward the non-moving party, as it must do, the court must base its decision on Mrs. Chen's assertion that she was arrested for merely engaging in a dispute with a ticket agent at the airport, and was subsequently dragged, handcuffed and crying, to the airport police station.  It is obvious that the parties have offered sharply conflicting versions of the events, and without a factual resolution of these differing accounts, the court cannot determine as a matter of law that the officers' actions were objectively reasonable or if officers of reasonable competence could disagree on the legality of the defendants' actions, given the discrete facts of this case.  Consequently, Officers Burns and Kleist are not entitled to immunity from suit pursuant to the privileges accorded under the doctrine of qualified immunity.

## F.     Vicarious Liability of the City of Syracuse

In Fera v. City of Albany, 568 F.Supp.2d 248, 261-62 (N.D.N.Y.), this court recently held that "[u]nder New York law, municipalities may be vicariously liable for negligent acts and intentional torts of police officers." Id., citing Schuster v. City of New York, 5 N.Y.2d 75, 81-82 (1958); Weeks v. City of New York, 693

N.Y.S.2d 797, 801 (1999) (holding that 'where, as here, the dangerous condition does not exist before police intervention, but is then created by the negligent acts of police officers ....  rather than applying principles of governmental immunity to shield the City from liability, principles of general tort liability should prevail.'); Savarese v. City of New York Housing Authority, 567 N.Y.S.2d 855 (2d Dep.1991) (holding that municipalities may be vicariously liable for intentional torts committed by employees); Wu v. City of New York, 934 F.Supp. 581, 592 (S.D.N.Y.1996) (holding that "an intentional infliction of emotional distress claim is viable against the City under a theory of respondeat superior liability.")  Fera, 568 F. Supp. 2d at 261-62.  Following the reasoning in Fera, the City of Syracuse is denied immunity on the surviving tort claims.

## III.   Conclusion

For the reasons set forth above, the court hereby:

(1) GRANTS defendants' motion for summary judgment as against Officer Mark Kleist, who is entitled to qualified immunity and is hereby DISMISSED from this action;

(2) Summary judgment is GRANTED on the claim against the City for negligent supervision and retention.  Accordingly, all Monell claims against the City are

DISMISSED;

(3) Summary judgment is GRANTED on the claim for NIED as against all parties;

(4) Summary judgment is granted on the claim of IIED against the City only; and

(5) Summary judgment on all remaining claims is DENIED.

**SO ORDERED.**

March 2, 2009

_____
Neal P. McCurn
Senior  U.S. District Judge

23